# R. A. GORDON v. G. M. MOORE.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued April 8, 1890—Decided May 5, 1890.

1. Where one of two partners, lessees of a furnished hotel, expends money, against the protest of his copartner, in repairs and improvements which neither increase nor preserve the firm assets, he is not entitled, without a subsequent ratification thereof, to charge such expenditures against the copartnership.

2. Nor may one partner, who negligently made an overpayment of rent, claimed by but not payable to a landlord who has become insolvent, charge such overpayment to the copartnership, against the objection of his fellow partner.

3. Where a bill for an account between partners was for four years before a master, who had personal knowledge of the services of an expert accountant employed, an allowance for such services will not be disturbed, in the absence of evidence that it was excessive.

4. Unless there are exceptional reasons for doing otherwise, it is the rule, in the settlement of a partnership business by proceedings in equity before a master, to charge the costs of the proceedings, including the master's fee, to the copartnership, or to the parties, equally.

(a) A landlord demised a furnished hotel to a firm consisting of two partners, one of whom was his son. At different times the landlord gave to his son sums of money which were expended by the latter in repairing the property and renewing the furniture:

5. The landlord taking no receipts or vouchers, or even verbal promises, evidencing that the money was supplied by him as a loan to the firm, and presenting no claim himself against the firm for repayment, such expenditures were not chargeable to the copartnership.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 204 January Term 1890, Sup. Ct.; court below, No. 709 December Term 1885, C. P. No. 4, in Equity.

On December 21, 1885, Robert A. Gordon filed a bill in equity against George M. Moore, praying for the dissolution of a partnership theretofore existing between them, for the appointment of a receiver, for an account, and for an injunction, etc.

Answer having been filed and issue joined, the cause was referred to *Mr. George W. Harkins,* as examiner and master, who filed a final report finding in the hands of the defendant a. net balance due to the firm of $29,456.15, of which each partner was entitled to one half, to wit: Robert A. Gordon to $14,728.08, and George M. Moore to $14,728.07. The net balance so found was ascertained after charging against the firm assets, inter alia, the master's fee, an accountant's bill for services, and the costs of the proceedings. A decree was recommended accordingly.

Exceptions to the report, filed before the master and by him overruled, having been renewed and argued before the court, the following opinion was filed, ARNOLD, J.:

The plaintiff and defendant were copartners in the hotel business, as lessees and proprietors of the Girard House in the city of Philadelphia, from January, 1881, to December, 1885, when the partnership expired by limitation. The bill in this case was filed to obtain a settlement of the partnership affairs. The matter was referred to a master who has made his report, which is now before us on exceptions thereto. Although the business was to be carried on in the firm name of R. A. Gordon & Co., the defendant took the receipts of the business into his own hands, deposited the money in bank in his own name, and paid it out on his individual check, so that he is the accounting partner. The exception of the plaintiff having been withdrawn, we have before us the exceptions of the defendant only.

1. It is alleged by the defendant that the firm owes Mr. Andrew M. Moore $47,998.62, of which the plaintiff should be charged with one half. Andrew M. Moore is the father of the defendant and the uncle of the plaintiff's wife. He is the present owner of the main hotel building and all the furniture therein. The above sum represents money received from Andrew M. Moore and used in repairing the property and renewing the furniture. It was given by Mr. Moore to his son, at different times and in various amounts, without taking receipts or vouchers or writings, or even verbal promises, to show that it was a loan, rather than a disbursement of his own money, on his own property, and for his own benefit.

So far as the money is represented by new furniture, Mr

Opinion of Court below.

Andrew M. Moore has it yet; and so far as it is represented by additions to and repairs of the property, he has the benefit of that also. Indeed, it is doubtful whether there is any indebtedness whatever for that sum by anybody. Mr. Andrew M. Moore, when called as a witness, stated, that he is the owner of all the furniture in the Girard House; he does not know of anything there that he has not paid for; there were great changes made in the furniture, and that he paid for them; they put in new elevators, and he paid for them; as to the papering, painting, and frescoing, he expects that he paid for all those items; he would give George, the defendant, the money whenever he asked for it; he gave George $5,000 at one time to pay the painters; he gave the money to pay for the paper-hanging, about $3,000; he don't know the exact amount he paid out in this way, but thinks it was $47,000; he paid for the bedding, and also for the carpets, $10,000. After an interval of a week, he was again examined, and then he said the $47,000 was a loan to George, the defendant. Persisting in this statement, he at last, in response to a leading question, said he presumed it was a loan for the partnership, but he holds no security, note, bond, or writing for it; that he owns the furniture because he bought and paid for it, and he holds his son and Mr. Gordon for the balance, $47,000.

This is not the satisfactory evidence which is required to prove an indebtedness. It proves that Mr. Andrew M. Moore, as the master says, is a man of well-known liberality, who laid out his money freely to keep the condition of his property good, and preserve its good-will and reputation among the traveling public. It is also a fact of some importance in the case that, while this proceeding has been in court since December, 1885, and the question whether the firm owed this item of $47,998.62 to Andrew M. Moore was a stoutly contested question from the beginning of the litigation, Mr. Moore has not presented a claim for it before the master, nor has he brought suit for it and thus, by the most conclusive means, settled this question. We agree with the master that that sum is not due by the firm to Andrew M. Moore, and dismiss the defendant's exception on that point.

2. The defendant was charged, in accounting, with the sum of $1,031.02, being an overpayment for rent which was not

due. It was paid to a former landlord, the Girard House Hotel Company, which owned the real estate for the first two years during which the plaintiff and defendant were in business. That company is now insolvent. The master charged the defendant with this sum, and in this he was right. The law is well settled that a partner who negligently pays a debt claimed, but not due, cannot charge the payment to the firm : In re Webb, 2 Moore (J. B.) 500 ; McIlreath v. Margetson, 4 Doug. 278. This exception is dismissed.

3. Another exception concerns the expenditure of moneys of the firm for repairs and permanent improvements. The master says that "during the five years of the firm's existence, there was expended of its moneys the sum of $29,214.19 on the former (repairs), and $5,454.05 on the latter (improvements), in all $34,668.24, and nearly the whole of this large amount was used in the improvement, alteration, and embellishment of the hotel property, the buildings." Against this expenditure the plaintiff protested. As the master well says, if this dispute were between the landlord and tenant, the latter would have no claim on the former for reimbursement. Here the dispute is between the lessees, one of whom expended the money, not only without the consent of his partner, but notwithstanding the protest of the latter.

The plaintiff testified : "I was not consulted about the expenditure of these moneys for repairs, furniture, and permanent improvements. I saw the repairs as they were going on. I made objection to George M. Moore, also to his father, Mr. Andrew M. Moore, who advanced the money for them, that I considered we were spending more money on this house than we were entitled to. Mr. A. M. Moore said to me, ' Bob, don't make any trouble with George ; I will see you all right.' I did not complain to George M. Moore afterwards, as it would not have been of any use. He never spoke to me about the money expended, or why it was expended, or anything about it. I did not know where the money was coming from. I never had access to the books of the firm so as to find out."

The law on this subject is thus expressed by a text-writer of high authority : " If a partner makes an improvement, outlay, or advance on behalf of a firm, he cannot charge it to the firm, unless his conduct is ratified by it, or unless the firm's assets

have been increased or preserved by such outlay or advance : " Lindley on Part., \*383. This, of course, applies to unusual expenditures, not within the scope of the business or necessary for its conduct: Clay v. Carter, 16 W. N. 385; Liveright v. Martin, 42 Leg. Int. 435. The plaintiff did not ratify this expenditure, but he protested against it. The assets of the firm were not increased nor preserved by it. The property of Mr. Andrew M. Moore was increased and preserved by it, and in view of the relationship between the parties and the promise of Mr. Moore to see the plaintiff " all right " if he made no trouble about it, we think this expenditure is not properly chargeable to the firm, but to the partner who made it.

In Cragg v. Ford, 1 Y. & C. Ch. Cas. 280, on a bill for the settlement of a partnership account, the plaintiff sought to charge the defendant with the loss which had been caused by delay in selling some cotton which belonged to the firm at its dissolution. The delay was the act of the defendant, who was the managing partner, principally trusted with the duty of winding up the affairs of the partnership, and the plaintiff had requested that the cotton should be immediately sold. The court said that, as the plaintiff himself might have sold the cotton or taken measures for its sale, the defendant ought not to be charged with the whole of the loss.

In the present case, the plaintiff was at the mercy of the defendant, who kept the money of the firm in his own name, and paid it out as he pleased, not only without the consent, but against the protest of the plaintiff, who could not help himself in the matter. When one partner improperly disposes of the partnership property, after being forbidden to do so by the other partner, the act is the individual act of the partner doing it, and not the act of the firm : Yeager v. Wallace, 57 Pa. 365. A prohibition of protest against a violation of partnership articles is binding as to all acts done after the prohibition or protest has been made : Cragg v. Ford, supra. We think the master did right in absolving the plaintiff from liability on this item, and dismiss the defendant's exception thereto.

4. This exception relates to the amount of the accountant's bill, $1,630, for services during this litigation. The amount seems large, but we have no evidence by which we can reduce

it. The matter has been before the master four years. He had the books and papers before him, and had a personal knowledge of the services performed by the accountant. In the absence of testimony, we must take the judgment of the master as correct, especially as the sum does not appear to be excessive or extraordinary. To overrule the master on this point would be an act of arbitrary power, without evidence, and, perhaps, without justice.

5. The last exception relates to the costs of the suit, which the master has charged to the firm, or both parties, equally. This is the rule in settling partnership accounts, unless there are exceptional reasons for doing otherwise: Gyger's App., 62 Pa. 73. We see no reason to depart from the rule in this case; at least, none has been shown to us by the defendant.

It is ordered that all the exceptions be dismissed, and the report of the master confirmed.

—A final decree having been entered, as recommended by the master, the defendant took this appeal, specifying the dismissal of his exceptions, the confirmation of the report, and the final decree for error.

*Mr. Samuel B. Huey* (with him *Mr. Ernest Lowengrund*), for the appellant.

On the subject of the loan by Andrew M. Moore, counsel cited: Maffet v. Leuckel, 93 Pa. 468; McConeghy v. Kirk, 68 Pa. 201; Alexander v. McGinn, 3 W. 220; Smith v. Collins, 115 Mass. 388; Lindley on Part., 131, 381; Story on Part., § 102; Hoskinson v. Eliot, 62 Pa. 393. As to the general powers of a partner in the firm business: Winship v. Bank of U. S., 5 Pet. 529; Moist's App., 74 Pa. 166. As to the ratification of unauthorized acts: Story on Part., § 192; Filbert v. Bickel, 7 W. N. 217; Fulton v. Bank, 92 Pa. 112; Schrack v. McKnight, 84 Pa. 26; Porter v. Patterson, 15 Pa. 229.

*Mr. Thomas R. Elcock*, for the appellee.

PER CURIAM:

The opinion of the learned judge below covers all the points

in this case.   We affirm the decree for the reasons given by him.

Decree affirmed, and the appeal dismissed, at the costs of the appellant.

------------◆------------

## ESTATE OF BALTZER NAPFLE, DECEASED.

APPEAL BY ANNA M. SHARP FROM THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued April 8, 1890—Decided May 5, 1890.

Where the testimony, on an application for an issue devisavit vel non, disclosed that the testator, though of great age and his eyesight and hearing and perhaps his memory defective, yet gave his own directions for the drawing of the will and the codicil, and at different times afterward referred to their provisions, a case was not presented which would sustain a verdict against the will, and an issue was properly refused.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 222 January Term 1890, Sup. Ct.; court below, No. 228 October Term 1888, O. C.

On March 17, 1888, Anna Maria Sharp presented a petition averring that she was a daughter of Baltzer Napfle, who died in November, 1887, leaving to survive him five children, including the petitioner and one grandchild, all being the issue of his marriage with Ann Wondoniger, deceased; that, at the age of 75 years, the decedent intermarried with one Emma, who had been his housekeeper and known to him about six months prior to said marriage, and the issue of said marriage was one child, Albert Napfle; that, at the age of 84 years, the decedent made a will by which he bequeathed to the children of his first marriage and said grandchild the sum of $500 each; that, one year later, without any change in his pecuniary circumstances or his relations with his family, a codicil to said will was executed reducing said legacies to $25 each, and leaving